UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BROOKE M.F.,

                          Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

Case No. C23-0928 MLP

ORDER

## I.        INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits.[1] Plaintiff contends the administrative law judge ("ALJ") erred in evaluating her testimony, the medical opinion evidence, in assessing the mental and physical limitations associated with her RFC, and in his step five findings. (Dkt. # 17 at 2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER - 1

## II.    BACKGROUND

Plaintiff was born in 1980, has a high school education, and has worked as a school bus driver, jewelry salesclerk, cosmetologist, and radio dispatcher. AR at 27. Plaintiff has not been gainfully employed since her November 2017 alleged onset date. *Id.* at 20, 56-57.

In June 2020, Plaintiff applied for benefits, alleging disability as of November 11, 2017. AR at 179-85. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 67-89, 90-114. After an April 2022 hearing, the ALJ issued a decision on October 5, 2022, finding Plaintiff not disabled. *Id.* at 14-35.

Using the five-step disability evaluation process, the ALJ found, in pertinent part, that Plaintiff has the following severe impairments: thyroid/adrenal disorder, depression, anxiety, and "Lyme disease vs. lupus vs. Hashimoto's."[2] AR at 20. The ALJ subsequently determined that Plaintiff retained an RFC for light work "except she could occasionally climb ladders, ropes, and scaffolds." *Id.* at 22. The ALJ further found that Plaintiff "could understand and remember simple tasks and instructions with only superficial public interaction." *Id.* Based on the opinion of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform her past work, but that she could perform jobs existing in significant numbers in the economy, including kitchen helper, auto detailer, and hand packager, all at the medium exertional level.[3] *Id.* at 28. The ALJ further found that Plaintiff could perform the jobs of office helper, marking clerk, and products

---

[2] The ALJ declined to make a determination regarding whether the proper diagnosis was Lyme disease, lupus, or Hashimoto's. AR at 20. In support, the ALJ noted that there "was no clear evidence of a diagnosis of [Lyme disease] by a medical provider." *Id.* The ALJ further found that while Plaintiff was "noted at times to have Lupus," "the records from her naturopath indicate that [she] does not have [it]." *Id.* The ALJ then stated that "regardless of [Plaintiff's] exact diagnosis," he had "considered all of [Plaintiff's] physical and mental complaints and ha[d] accommodated them in the [assessed] RFC." *Id.*

[3] The ALJ mistakenly listed the position as "auto dealer." AR at 28. However, this was a scrivener's error because the job as described and testified to by the VE was an "auto detailer." *Id.* at 62.

assembler, all at the light exertional level. *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled. *Id.* at 34.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (citations omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

1

## IV.    DISCUSSION

2

### A.    The ALJ Did Not Err in Evaluating Plaintiff's Testimony

3       The ALJ found that Plaintiff presented objective medical evidence establishing that her

4 medically determinable impairments could cause the symptoms alleged, and no affirmative

5 evidence of malingering. AR at 22-23. Accordingly, the ALJ was required to provide "specific,

6 clear and convincing reasons" for rejecting Plaintiff's symptom testimony concerning the

7 intensity, persistence, and limiting effects of her mental and physical impairments. *Tommasetti v.*

8 *Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th

9 Cir. 1996)); *accord Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (confirming that the

10 "clear and convincing" standard continues to apply).

11       The ALJ offered multiple reasons for discounting Plaintiff's testimony, including: (1) her

12 "minimal" treatment, which included the failure to seek out and engage in more conventional

13 treatments; (2) Plaintiff's reported improvement with naturopathic treatment; (3) Plaintiff's

14 activities of daily living ("ADLs"); (4) the absence of "significant change in the nature of

15 [Plaintiff's] complaints, her course of treatment, or her functioning" in post- December 31, 2020

16 DLI ("date last insured") records; and (5) the absence of a clear etiology for Plaintiff's vague

17 physical complaints regarding brain fog, fatigue, and poor concentration. AR at 23-25. The Court

18 addresses each in turn.

19                    *1.    Conservative Treatment*

20       In 2003-2004, many years prior to the November 2017 commencement of the relevant

21 period in this case, Plaintiff suffered from thyroid issues, for which she sought conventional

22 medical care, and which medical records show resolved by 2005.[4] *See, e.g.*, AR at 617, 645 (Dr.

23

---

[4] The relevant period spanned from Plaintiff's November 11, 2017 onset date through her December 31, 2020 DLI.

Steadman notes in November 2007 that Plaintiff "has a history of Graves[,] was on medication for about a year, was able to get off medication[,] and has been off for about [four] years now," that Plaintiff's "last TSH" from 2005 "was normal," and that Plaintiff in 2007 "denie[d] any symptoms of hypo or hyperthyroidism."). Additionally, five years prior to the commencement of the relevant period, in 2012, Plaintiff was hospitalized in a psychiatric hospital for major depression, and, at that time, received conventional treatment that included psychiatric medications, which she later discontinued. *See id.* at 576-86.

Subsequently, in approximately 2013, four years prior to Plaintiff's onset date, Plaintiff chose to "g[e]t off of everything," including all conventional medications, and to "go . . . more [to] the holistic side." AR at 59; *see also id.* at 475 (Plaintiff advises Dr. Wallace in January 2021 that she believes her mental impairments began as a result of the immunizations she received while in sixth grade). Following 2013, Plaintiff has not been under the care of a neurologist. *Id.* at 58. Plaintiff began seeing a mental health counselor, Ms. Finley, in June 2020, but she has not been under the care of a psychiatrist, and she has not been prescribed any medications for her mental health or physical impairments since 2013. *Id.* at 58, 283-90; *see also id.* at 1230 (Plaintiff notes that she stopped taking her thyroid medication in 2013); AR 508 (Naturopath, Dr. Wallace, notes in March 2021 that Plaintiff "is not currently seeing a psychiatrist despite recommendation"); *id.* at 381 (examining ARNP Swan notes in August 2021, that there was no evidence that "any traditional therapies such as medications, physical therapy, occupational therapy, etc., have been performed," and opines that "[w]ith optimal therapy[,] it is likely [Plaintiff] could have some improvement of the musculoskeletal, neuro-motor symptoms"). In addition to Ms. Finley, Plaintiff has been treated since April 2019 by naturopath,

1    Dr. Aubrey Wallace.[5] *Id.* at 345-47. Other than treatment for urinary tract infections, Plaintiff

2    has rarely, if ever, sought conventional medical care since 2013.[6]

3            Plaintiff argues that the ALJ erred in discounting her testimony based on her failure to

4    pursue non-conventional treatment, and in doing so, improperly downplayed her treatment with a

5    naturopath as "conservative" treatment and engaged in improper "character judging." (Dkt. # 17

6    at 10.) Plaintiff further argues that the ALJ improperly "play[ed] doctor" in suggesting that

7    Plaintiff would have engaged in more conventional treatment if her impairments were as severe

8    as she alleged. (*Id.* at 13, 21.) Finally, Plaintiff argues that pursuant to Social Security Ruling

9    ("SSR") 18-3p, the ALJ was required to determine whether she had a proper reason for failing to

10   obtain more conventional treatment. (*Id.* at 23 n.3); *see also* SSR 18-3p, Titles II and XVI:

11   Failure To Follow Prescribed Treatment, 2018 WL 4945641 (Oct. 2, 2018).

12           Here, as the Commissioner accurately notes, aside from Plaintiff's self-reports, there is

13   no record evidence that Plaintiff was ever medically diagnosed with Lyme disease, or that she

14   attempted to treat conventionally her Lyme disease, lupus, adrenal disorder, or thyroid conditions

15   — aside from the thyroid treatment she received in 2003-2004.[7] (Dkt. # 22 at 4.) Nor is there

16   evidence that she attempted to treat conventionally her mental health impairments after 2013.

17

18   [5] In a March 2021 treatment statement from Dr. Wallace, Dr. Wallace appears to have mistakenly stated
     that Plaintiff began treatment in June 2020. AR at 508. Prior to commencing treatment with naturopath,
19   Dr. Wallace, Plaintiff was seen by naturopath, Dr. Laura Martin, in 2014 only (prior to the relevant period
     in this case). *See id.* at 547-48, 276-77.

20   [6] In April 2019, Plaintiff was seen by a physician at the Everett Clinic for a urinary tract infection, for
     which she was given an antibiotic. AR at 1244-46. However, she subsequently reported to naturopath, Dr.
21   Wallace, that she failed to comply with the antibiotic's regimen, and took only half of the required dose.
     *Id.* at 345-46. As a result, Plaintiff symptoms returned, which she attempted to address by drinking a
22   heavy metal detox smoothie every day. *Id.* at 345. Plaintiff was also treated for another UTI in 2022. *Id.* at
     1255.

23   [7] Dr. Wallace, Plaintiff's naturopath, diagnosed her in March 2021 with heavy metal toxicity, agoraphobia
     with panic disorder, hair loss, disorientation/brain fog, and abdominal pain. AR 508; *cf. id.* at 59 (Plaintiff

Plaintiff points out that in treating her impairments with a naturopath, she took numerous supplements and vitamins. However, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995)); *see also Tommasetti*, 533 F.3d at 1039 ("The ALJ may consider . . . in weighing a claimant's credibility . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]") (internal quotation marks omitted). The Ninth Circuit has held that a claimant's treatment solely with "homeopathic remedies and nonprescription pain medications" constituted "evidence of conservative treatment." *See Hocevar v. Kijakazi*, No. 20-36069, 2021 WL 5917991, at *1 (9th Cir. Dec. 15, 2021) (holding that where Plaintiff testified to "uncontrollable pain all over his body," Plaintiff's absence of conventional treatment constituted a sufficient reason to discount his testimony). Here, like *Hocevar*, the ALJ was entitled to reject Plaintiff's testimony based on her conservative treatment, and in doing so did not "play doctor" as Plaintiff suggests.

Moreover, this was not a case where Plaintiff merely supplemented her conventional treatment with naturopathic treatment. In fact, the record reveals that post-2013, Plaintiff pursued nearly entirely naturopathic treatment despite recommendations to the contrary. *See* AR at 381, 508.

Furthermore, Plaintiff's reliance on SSR 18-3p is misplaced. SSR 18-3p applies only to cases in which a claimant has already been deemed disabled. *See* 2018 WL 4945641, at *3 (noting that SSA "will not determine whether an individual failed to follow prescribed treatment if we find the individual is not disabled . . . ."); *accord Molina*, 674 F.3d at 1114 n.6 (confirming

---

testified in April 2022 that Dr. Wallace diagnosed her with "a blood parasite that mimics the symptoms of Lyme's disease").

that SSR 18-3p's predecessor, and by extension SSR 18-3p, is inapplicable where the ALJ determined that a claimant was not disabled, and that individual's failure to seek treatment was merely a factor in the ALJ's credibility determination). Here, the ALJ did not find Plaintiff disabled, and like *Molina*, the ALJ properly considered Plaintiff's failure to seek conventional treatment only in conjunction with her credibility at step four of the analysis. Thus, SSR 18-3p does not apply.

For the above reasons, Plaintiff's conservative treatment, which included a lack of conventional treatment, constituted a sufficient reason for the ALJ to discount her testimony.

### 2.    *Improvement with Naturopathic Treatment*

In rejecting Plaintiff's testimony, the ALJ also found that Plaintiff's reported improvement with her naturopathic treatment suggested that her impairments were sufficiently managed and supported discounting her testimony regarding the severity of her impairments and symptoms. AR at 23 (citing *id.* at 350, 415).

Plaintiff challenges the ALJ's finding that her symptoms had "improved," arguing that if her condition had been well-controlled or resolved by naturopathy, she would not have needed to continue with the naturopathic treatment, taking "at times invasive and significant" amounts of supplements. (Dkt. # 17 at 21.) Review of the records, including those cited by the both the ALJ and Plaintiff, demonstrates that, indeed, Plaintiff's symptoms waxed and waned during her naturopathic treatment. (*Id.* (referring to record citations from AR at 24, including *id.* at 40-53, 220-27, 293-96, 324-33, 336-46, 481-89, 508-12, 523-26, 538-45, 547, 553-56, 562-66, 577-81, 758-63, 1431-33)); *see also* AR at 350 (Dr. Wallace notes in May 2019 that Plaintiff's brain fog and energy had "dramatically improved," as had her panic attacks, but that she continued to feel more anger and tension); *id.* at 415 (Dr. Wallace notes in September 2020 that Plaintiff was

feeling more energized and sleeping better, and pressure-washed her house earlier in the week, but that she was feeling worse anxiety and was more tense and irritable).

Given the ebb and flow of Plaintiff's symptoms, this reason was not supported by sufficiently specific, clear, and convincing evidence.

### 3.    Activities of Daily Living

In discounting Plaintiff's testimony, the ALJ also relied on Plaintiff's ability to handle "significant responsibility at home," noting that she is the primary caregiver to her special needs son, whom she also homeschools.[8] AR at 25.

Plaintiff argues that the ALJ erred in relying on her daily activities, contending that her function report on which the ALJ relied was from "years before the hearing." (Dkt. # 17 at 24); *see also* AR at 220-31. The Court's review of the ALJ's decision suggests that the ALJ did not, however, explicitly cite to the July 2020 function report referenced by Plaintiff. *See* AR at 23-25. Nevertheless, even if he had, the Court notes that the July 2020 report falls within the relevant period in this case, and that the ALJ was entitled to rely on the report and Plaintiff's statements contained therein.

---

[8] The ALJ also noted that, in terms of Plaintiff's ADLs, post-DLI in 2021, Plaintiff also sold "Healy" machines. AR at 21, 24, 25 (citing *id.* at 509, naturopath Dr. Wallace's June 2021 notes that Plaintiff had begun to sell Healy machines). Prior to selling the machines, in March 2021, Plaintiff reported to her counselor, Ms. Finley, that her parents were buying her a new "healing machine" called a "Healy." *Id.* at 339. At her April 2022 hearing, Plaintiff explained that the Healy is a "bioresonance" machine that "sends frequencies through your body through microcurrents." *Id.* at 43. In June 4, 2021 treatment notes from her naturopath, Dr. Wallace stated that Plaintiff was "[r]unning Healy programs three times daily" for her "[e]yes, toxins, [] immune system, and hormones" and "muscle aches and pains and muscle stiffness," and that she had experienced improvement after a few hours of treatments. *Id.* at 509. By April 2022, Plaintiff testified that she was giving herself "four [Healy] treatments" per day for approximately one hour each. *Id.* at 43.

The record, however, is unclear regarding the extent of Plaintiff's Healy machine sales. Additionally, the ALJ did not address that the sales occurred post-DLI. Accordingly, the Court has not relied on Plaintiff's Healy machine sales as a reason for affirming the ALJ's evaluation of her testimony.

1    Plaintiff also argues that this reason fails because the ALJ failed to explain how her

2    activities were equivalent to a full-time job. (Dkt. # 17 at 24-25.)

3    Indeed, the Ninth Circuit recognizes that, "the mere fact that a plaintiff has carried on

4    certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise,

5    does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*,

6    260 F.3d 1044, 1050 (9th Cir. 2001) (citations omitted); *see also Reddick v. Chater*, 157 F.3d

7    715, 722 (9th Cir. 1998) (citations omitted) ("disability claimants should not be penalized for

8    attempting to lead normal lives in the face of their limitations"). However, this is not a case

9    where Plaintiff simply performed routine activities of childcare and daily living. Rather, Plaintiff

10   homeschooled her special needs son for years on a daily basis, choosing to continue

11   homeschooling even when her son was eligible to return to school in 2021 following the

12   pandemic. *See* AR 40-42 (describing daily homeschool routine at hearing in April 2022); *id.* at

13   533 (Counselor Finley notes that Plaintiff is making the difficult decision to continue to

14   homeschool son in September 2021, and the fact that homeschooling will be "a huge

15   challenge"); *id.* at 558 (Counselor Finley notes in 2022 that Plaintiff is worried about her son,

16   whom she continues to homeschool despite concerns that he is falling behind academically).

17   Accordingly, even though Plaintiff continued to experience waxing and waning symptoms, her

18   ability to homeschool her special needs son during the relevant period constituted a valid reason

19   that undermined her testimony regarding the severity of her impairments. *See Smartt*, 53 F.4th at

20   499.

21          4.      *Plaintiff's Post-DLI Status and Medical Records*

22   In discounting Plaintiff's testimony, the ALJ also cited post-DLI medical records that

23   "show no significant change in the nature of her complaints, her course of treatment, or her

1    functioning." AR at 24. In support, the ALJ noted Plaintiff's continued post-DLI treatment by a

2    naturopath, along with additional January 2021 observations from consulting ARNP Swan,

3    demonstrating that Plaintiff was "well kempt, in no distress, able to move around with ease, and

4    was not observed to be in pain." *Id.* (citing AR at 324-31).

5            Plaintiff acknowledges this reason, but fails to adequately develop an argument. (*See* dkt.

6    # 17 at 23) (Plaintiff notes without any further elaboration the ALJ's "attempt[] to support his

7    determination [regarding Plaintiff's testimony] by finding that Plaintiff again purportedly had

8    normal findings in various medical records and demonstrated various normal or mixed findings

9    on mental status examinations"). To the extent that Plaintiff intended to argue the ALJ engaged

10   in improper cherry-picking of the record, she failed to adequately develop that argument with

11   respect to this issue. (*See id.* at 11, 22-28.) Plaintiff's failure to develop supported arguments

12   means that she leaves on the table unchallenged findings by the ALJ, which, like this one, the

13   Court is unable and unwilling to disturb given that it is not the Court's job to develop Plaintiff's

14   arguments for her. *See Putz v. Kijakazi*, 2022 WL 6943095, at *2 (9th Cir. Oct. 12, 2022) (noting

15   that where claimant gave "short shrift" to her arguments, failing to "actually argue" any of her

16   points beyond "bare assertions of error," she waived the arguments) (citing *Indep. Towers of*

17   *Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)) (noting that it is not the district court's

18   job to "manufacture arguments where none is presented"); *accord Sekiya v. Gates*, 508 F.3d

19   1198, 1200 (9th Cir. 2007); *see also Nichole L.*, 2024 WL 248709, at *6 (concluding in a case

20   where Plaintiff was represented by the same counsel, that Plaintiff waived arguments where

21   "Plaintiff spen[t] fifteen pages in their brief summarizing various parts of the record, largely

22   absent citation, but then fail[ed] to explicitly tie the findings to an alleged error in the ALJ's

23   decision").

1    Accordingly, the Court finds no error with respect to this reason. Nevertheless, the Court

2    notes that even if this reason was not sufficient, any error would be harmless given the Court's

3    other findings that the ALJ properly discounted Plaintiff's testimony based on her conservative

4    treatment and the homeschooling of her son. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1160

5    (9th Cir. 2008) (citations omitted) (even where court concludes that an ALJ relied on one invalid

6    reason, such reliance is harmless because the error "does not negate the validity of the ALJ's

7    ultimate credibility conclusion").

8             5.    *Unknown Etiology of Plaintiff's Symptoms and Related Impairments*

9    Finally, in discounting Plaintiff's testimony, the ALJ also noted the absence of a "clear

10   etiology for [Plaintiff's] complaints," related in part to her lack of conventional treatment and

11   care. AR at 24. Again, Plaintiff fails to adequately develop an argument challenging this reason,

12   instead citing to a Tenth Circuit case in support of her general argument that the ALJ failed to

13   offer sufficient reasons for discounting her testimony. (*See* dkt. # 17 at 25-26 (citing *Huston v.*

14   *Bowen*, 838 F.2d 1125 (10th Cir. 1988)).)

15   In a controlling case on this issue, *Smartt v. Kijakazi*, the Ninth Circuit held that "[w]hen

16   objective medical evidence in the record is inconsistent with the claimant's subjective testimony,

17   the ALJ may indeed weigh it as undercutting such testimony." 53 F.4th at 499. In so holding, the

18   *Smartt* Court reasoned that an ALJ is not required "to simply accept a claimant's subjective

19   symptom testimony notwithstanding inconsistencies between that testimony and the other

20   objective medical evidence in the record, allowing a claimant's subjective evidence to effectively

21   trump all other evidence in a case." *Id.* (noting that "the standard isn't whether [the] court is

22   convinced, but instead whether the ALJ's rationale is clear enough that it has the power to

23   convince").

1    Here, the evidence and medical records cited by the ALJ supported his finding. *See* AR at

2    23-25. To the extent Plaintiff requests a reweighing of the evidence, the Court declines to do so.

3    *See Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) (even if a claimant's explanation is a

4    rational one, a court will not disturb the ALJ's differing rational interpretation where the ALJ's

5    interpretation is adequately supported); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

6    2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

7    conclusion that must be upheld."). Furthermore, the Court notes that the ALJ did not simply rely

8    on an absence of medical evidence regarding the etiology of Plaintiff's complaints in rejecting

9    Plaintiff's testimony. Instead, the ALJ stated additional reasons, which, as discussed above,

10    constituted specific, clear and convincing findings that supported the ALJ's discounting of

11    Plaintiff's testimony. Considered in combination with the other valid reasons, the ALJ's finding

12    regarding the etiology of Plaintiff's complaints constituted a sufficient, valid reason.

13    In sum, the ALJ proffered multiple adequate, valid reasons supporting his findings

14    discounting Plaintiff's testimony. Even though the Court has concluded that the ALJ relied on at

15    least one invalid reason, such reliance is harmless because the error "does not negate the validity

16    of the ALJ's ultimate credibility conclusion." *Carmickle*, 533 F.3d at 1160.

17    **B.    The ALJ Did Not Err in Evaluating the Medical Opinions**

18    Plaintiff also challenges the ALJ's assessment of the medical opinions from examining

19    ARNP Swan and treating mental health counselor, Ms. Finley.[9] (Dkt. # 17 at 27.)

20

---

21    [9] In many places, Plaintiff's brief lacks clarity regarding the medical opinions challenged. Significantly,
Plaintiff failed to set forth in her required statement of issues the specific medical opinions she

22    challenges, instead conflating the medical opinion issue(s) with her more general challenge to the ALJ's
assessed RFC and her challenge to the ALJ's evaluation of her testimony. (Dkt. # 17 at 2.) However, the

23    Court's review of later portions of Plaintiff's opening brief confirms that Plaintiff in fact challenges the
ALJ's assessment of ARNP Swan's and Ms. Finley's opinions. (*See* dkt. # 17 at 27.)

1          1.     *Examining Nurse Practitioner Swan*

2          ARNP Swan reviewed Plaintiff's records and examined Plaintiff in January 2021, in

3    conjunction with his opinion. AR at 323-34. ARNP Swan recited Plaintiff's self-reported

4    complaints, noting Plaintiff's assertion that she had been diagnosed with Lyme disease, which

5    affected her neurological system and caused brain fog, dizziness, vision issues, forgetfulness,

6    swollen lymph nodes, hormone imbalances, and abnormal adrenals and cortisol levels. *Id.* at

7    324-26. ARNP Swan diagnosed "spasticity" of left lower extremity, decreased strength of lower

8    extremities, right ulnar dysfunction, cervical and lumbar radiculopathy, and abnormal range of

9    motion of shoulders in external rotation, cervical spine, and lumbar spine. *Id.* at 331. ARNP

10   Swan, however, noted that Plaintiff's physical examination "did not demonstrate significant

11   fatigue or balance abnormalities" or any "barriers or limitations to treatment." *Id.* at 331.

12         ARNP Swan stated that there was no evidence that "any traditional therapies such as

13   medications, physical therapy, occupational therapy, etc., have been performed." AR 331. ARNP

14   Swan opined that "[w]ith optimal therapy[,] it is likely [Plaintiff] could have some improvement

15   of the musculoskeletal, neuro-motor symptoms," and that it "is unclear if any of the objective

16   findings on [ARNP Swan's own exam that day] are related to [Plaintiff's] underlying

17   complaints." *Id.* ARNP Swan confirmed that "[f]urther testing [is] needed to determine cause

18   and prognosis," and opined that Plaintiff should undergo "imaging of the cervical spine and

19   lumbar spine with EMG, [and] evaluation by neurosurgeon and orthopedics."[10] *Id.*

20         ARNP Swan subsequently opined that Plaintiff was able to stand and/or walk for a total

21   of four hours in an eight-hour workday with breaks, and that she was able to sit for eight hours

22   total in an eight-hour workday with breaks. AR at 333. ARNP Swan further opined that Plaintiff

23

---

[10] There is no evidence that Plaintiff followed through with these recommendations.

1    could frequently lift and/or carry up to two pounds, and could occasionally lift and/or carry up to

2    five pounds. *Id.* He opined that she would possess postural limitations in reaching above her

3    shoulders, some manipulative restrictions, and some environmental limitations. *Id.*

4         The ALJ found ARNP Swan's opinion unpersuasive. Specifically, the ALJ found that the

5    opinion lacked supportability for two reasons: first, because it was based on Plaintiff's

6    unsupported subjective complaints; and, second, because the opined limitations were not

7    adequately supported by ARNP Swan's own exam findings, which demonstrated "some reduced

8    range of motion" but simultaneously indicated that Plaintiff "was in no distress and was able to

9    move around independently with no evidence of pain." AR at 25-26. The ALJ further found the

10   "drastic limitations" in the opinion were inconsistent with the longitudinal record that showed

11   "minimal engagement in treatment outside of naturopath care suggesting that these measures

12   alone are sufficient in controlling [Plaintiff's] symptoms." *Id.* at 26.

13        Plaintiff argues in a conclusory manner that ARNP Swan's opinion was "supported by

14   and consistent with the medical record evidence," citing to two out-of-circuit cases and a long

15   list of record citations. (Dkt. # 17 at 27-28 (citing AR at 25-26, 40-53, 220-27, 293-96, 324-33,

16   336-46, 481-89, 508-12, 523-26, 538-45, 547, 553-56, 562-66, 577-81, 758-63, 1431-33).)

17   Plaintiff fails to explain what her record citations show, let alone how they contradict the ALJ's

18   findings. *Id.*

19        Under regulations applicable to this case, the ALJ is required to articulate the

20   persuasiveness of each medical opinion, specifically with respect to whether the opinions are

21   supported by and consistent with the record. *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

22   An ALJ's consistency and supportability findings must be supported by substantial evidence. *See*

23   *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

1    Having reviewed Plaintiff's record citations, the Court finds that both the ALJ's

2    supportability and consistency findings are supported by substantial evidence. ARNP Swan's

3    opinion was more heavily based on Plaintiff's self-reports than his own clinical findings, relying

4    in large part on Plaintiff's own account regarding the history of her impairments, symptoms, and

5    diagnoses. *See* AR at 324-27. For the reasons already discussed, Plaintiff's statements were

6    themselves unsupported by conventional treatment notes and/or medical records, and the ALJ's

7    rejection of Plaintiff's testimony was supported by substantial evidence. Accordingly, the ALJ's

8    supportability finding regarding ARNP Swan's opinion was likewise supported by substantial

9    evidence. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti*, 533

10   F.3d at 1041) ("If a treating provider's opinions are based 'to a large extent' on an applicant's

11   self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ

12   may discount the treating provider's opinion.").

13   Turning to consistency, the ALJ's finding that ARNP Swan's opinion was inconsistent

14   with the longitudinal evidence was also supported by substantial evidence. As discussed in detail

15   above, Plaintiff chose to follow a holistic treatment path that itself failed to support the intensity

16   and level of symptoms to which she testified. Similarly, Plaintiff's lack of engagement in

17   conventional treatment further undermined the consistency of ARNP Swan's medical opinion.

18   For these reasons, the ALJ did not err in evaluating ARNP Swan's medical opinion.

19            2.       *Treating Counselor, Ms. Finley*

20   In September 2021, Plaintiff's mental health counselor Ms. Finley completed a "mental

21   disorder questionnaire form" in which Ms. Finley noted that Plaintiff had been diagnosed with

22   major depressive disorder and generalized anxiety disorder. AR at 539. Ms. Finley noted that

23   Plaintiff experiences "difficulty concentrating due to her frequent brain fog, trouble focusing

1    when reading or trying to navigate on her computer, and a noticeable change in her energy and

2    ability to feel motivated to live a normal life." *Id.* Ms. Finley further noted that Plaintiff had been

3    unable to drive or to engage in social activities for approximately three years. *Id.* She also

4    observed that Plaintiff is able to care for herself, her son, and her personal affairs "if she can

5    avoid social situations." *Id.* at 541. Ms. Finley opined that Plaintiff "will not be able to work

6    until she clears up her brain fog and other physical health symptoms." *Id.* at 543.

7           The ALJ found that Ms. Finley's opinion was not persuasive, noting that Ms. Finley

8    largely reiterated Plaintiff's own complaints. The ALJ also found the opinion inconsistent with

9    the longitudinal record that showed Plaintiff failed to engage in conventional care, treatment, and

10   medication, taking only "various herbs, vitamins, and supplements," thus suggesting that

11   Plaintiff's "symptoms are well[-]managed with her current regimen alone." AR at 26.

12          Plaintiff's argument regarding Ms. Finley's opinion is identical to her argument regarding

13   ARNP Swan's opinion. (Dkt. # 17 at 27-28.) Other than her citations to out-of-circuit law,

14   Plaintiff simply cites to a long a list of record citations that she contends show Ms. Finley's

15   opinion was supported and consistent. (*Id.* at 27 (citing AR at 25-26, 40-53, 220-27, 293-96,

16   324-33, 336-46, 481-89, 508-12, 523-26, 538-45, 547, 553-56, 562-66, 577-81, 758-63,

17   1431-33).)

18          Again, having reviewed Plaintiff's record citations, the Court finds that both the ALJ's

19   supportability and consistency findings are supported by substantial evidence. Additionally, the

20   Court finds that for all of the reasons set forth above, Ms. Finley's opinion lacked supportability

21   because it was based largely on Plaintiff's self-reports. It also lacked consistency given the

22   absence of conventional treatment as reflected by the longitudinal record.

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

### C.    The ALJ Did Not Err in Assessing Plaintiff's RFC

#### 1.    *Limitation Regarding Interaction with Coworkers and Supervisors*

In April 2021 and October 2021 medical opinions, consulting state agency psychologists, Drs. Rita Flanagan and Howard Atkins, respectively, each identified moderate social limitations. (Dkt. # 22 at 10); *see also* AR at 25 (discussing *id.* at 84-85, 109-10). Specifically, Drs. Flanagan and Atkins both opined that Plaintiff was moderately limited in her ability to interact appropriately with the generally public. *Id.* at 84, 109.

Additionally, both Drs. Flanagan and Atkins opined that Plaintiff's abilities to get along with coworkers or peers and to accept instructions and respond appropriately to criticism from supervisors were also moderately limited. AR at 85, 110. Both psychologists, however, also opined that Plaintiff was "not significantly limited" in her ability to "maintain socially appropriate behavior." *Id.* Subsequently, both Drs. Flanagan and Atkins summarized in narrative form Plaintiff's social interaction capacities and/or limitations as follows: "[Plaintiff] is able to interact with a supervisor to ask and accept simple instructions." *Id.*

The ALJ found persuasive both opinions, and limited Plaintiff to "only superficial public interaction." AR at 22. The ALJ further incorporated and translated Drs. Flanagan's and Atkins' opined limitations in Plaintiff's assessed RFC, limiting Plaintiff to "simple tasks and instructions." *Id.*

Plaintiff did not specifically challenge the ALJ's evaluation of Drs. Flanagan's and Atkins' opinions.[11] (*See* dkt. # 17 at 27-28.) However, in conjunction with her RFC challenges, Plaintiff now argues that the ALJ's assessed social RFC limitations were insufficient because the ALJ did not explicitly limit Plaintiff's interactions with supervisors and coworkers. (*Id.* at 9.)

---

[11] To the extent that Plaintiff intended to challenge the ALJ's evaluation of those opinions, Plaintiff failed to adequately develop such arguments. *See Indep. Towers of Wash.*, 350 F.3d at 929.

Plaintiff contends that evidence and testimony regarding her extreme anxiety, panic attacks, and problems interacting with others supported a greater limitation regarding her interactions with both supervisors and coworkers. (*Id.* at 9-10.) In support, Plaintiff cites to her July 2020 function report, treatment notes from Ms. Finley, April 2019 intake notes and records from naturopath, Dr. Wallace, and medical records from a 2012 psychiatric stay many years prior to the relevant period and during a time when Plaintiff was willing to seek conventional care. (*See id.* (citing AR at 22-26, 220, 223-26, 293-96, 336-46, 508, 523-26, 538-45, 553-56, 564, 577-81, 758-63).)

The Commissioner counters that the success of Plaintiff's argument depends on the Court's evaluation of Plaintiff's other arguments regarding the ALJ's evaluation of her testimony and the medical opinion evidence, contending that the ALJ properly assessed Plaintiff's testimony and the opinions. (Dkt. # 22 at 10.) Additionally, the Commissioner argues that the ALJ reasonably translated the social functional limitations supported by the medical record, including those in Drs. Flanagan's and Atkins' opinions, when the ALJ adopted Drs. Flanagan's and Atkins' narrative limitations. (*Id.*)

The Court agrees. It is "the ALJ who is responsible for translating and incorporating clinical findings into a succinct RFC." *Washington v. Kijakazi*, 72 F.4th 1029, 1042 (9th Cir. 2023) (quoting *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)). When making the RFC determination, the ALJ is only required to consider those limitations for which there is substantial record support that does not depend on the claimant's subjective complaints, where the ALJ has determined that Plaintiff lacks credibility. *See Bayliss*, 427 F.3d. at 1217. Here, the Court has already determined that the ALJ did not err in his assessment of Plaintiff's testimony or in his evaluation of the medical opinions from ARNP Swan and Ms.

1  Finley. Thus, the ALJ need not have included Plaintiff's proffered limitations from those sources

2  in the ALJ's RFC assessment.

3          Moreover, "the limitations listed in the RFC determination need only be consistent with,

4  rather than identical to, the limitations identified by [the] . . . physician." *Linden v. Berryhill*, 736

5  F. App'x 684, 686 (9th Cir. 2018) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223

6  (9th Cir. 2010)). Here, the ALJ's assessed social limitations were consistent with Drs. Flanagan's

7  and Atkins' "narrative form" opinions. They were also consistent with the ALJ's own prior

8  findings that while Plaintiff "subjectively endorses problems in social settings, the record

9  show[s] that she is consistently observed to be pleasant and cooperative during appointments and

10  is able to get along appropriately with her providers," that "she was able to sell Healy machines,"

11  and that she "is able to spend time with family." AR at 21; *see also Kaufmann v. Kijakazi*, 32

12  F.4th 843, 851 (9th Cir. 2022) (noting that a reviewing court must consider an ALJ's "full

13  explanation").

14                    2.    *ALJ's Alleged Improper Cherry-Picking and "Playing Doctor"*

15          Plaintiff also contends the ALJ engaged in improper cherry-picking in assessing her RFC.

16  (Dkt. # 17 at 11-13.) Aside from one example regarding Plaintiff's ADLs, Plaintiff fails to

17  adequately develop this argument, instead simply stringing together and summarizing several

18  rules of law regarding cherry-picking and "playing doctor." (*Id.* at 12-13.) Regarding her ADLs,

19  Plaintiff contends the ALJ improperly cherry-picked the evidence, repeating the same arguments

20  that the Court has already addressed regarding her testimony and the medical opinions.

21  Accordingly, those arguments fail for the reasons stated above. Plaintiff's remaining conclusory

22  arguments fail as well because Plaintiff has not adequately tied her general assertions of error

23  and summaries of law to particular examples of cherry-picking or playing doctor. (*See id.* at 11-

13.) It is not this Court's job to make Plaintiff's arguments for her. *See Indep. Towers of Wash.*,

350 F.3d at 929.

### 3.    *Necessity of a Function-by-Function Analysis*

Plaintiff further argues that the ALJ erred in assessing her RFC because he failed to

undertake a "function-by-function" analysis in accordance with SSR 96-8. (Dkt. # 17 at 15-18.)

In support, Plaintiff cites to multiple out-of-circuit cases, asserting that such a function-by-

function analysis is "a well-recognized and binding requirement in numerous Circuits." (*Id.* at 16

(citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), and *Cichocki v. Astrue*, 729 F.3d 172,

177 (2d Cir. 2013)).) Plaintiff, however, ignores that the Ninth Circuit — the controlling law in

this case — has held otherwise. *See Bayliss*, 427 F.3d at 1217 (holding that "[p]reparing a

function-by-function analysis for medical conditions or impairments that the ALJ found neither

credible nor supported by the record is unnecessary"); *see also Cichocki*, 729 F.3d at 177

(Second Circuit describes circuit split on issue, lists cases, cites *Bayliss*, 427 F.3d at 1217, and

holds that it "agree[s] with our sister Circuits [including the Ninth Circuit's decision in *Bayless*]

that remand is not necessary merely because an explicit function-by-function analysis was not

performed").

### 4.    *Absence of Time Off-Task and/or Absenteeism Limitation*

Plaintiff also argues that the ALJ erred in assessing her RFC when he found that she

possessed moderate difficulties in concentration, persistence, and pace, but then failed to include

a time off-task or absenteeism limitation. (Dkt. # 17 at 19 (citing AR at 62-64).) In support,

Plaintiff again cites out-of-circuit law, arguing that the ALJ was required to make an explicit

finding. (*Id.* at 19-20 (citing *Kelly M. v. Comm'r*, 2018 WL 5786116, at *7 (D. Md. 2018), and

*Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)).) Plaintiff, however, fails to provide any

1   record citations in support of her argument that the RFC was not consistent with the evidence in

2   this respect.

3           In *Nichole L. v. Commissioner*, this Court rejected a nearly identical argument posed by

4   Plaintiff's same counsel as in this case, noting that the *Nichole L.* claimant's argument was

5   contrary to Ninth Circuit case law. *See* 2024 WL 248709, at *7. The outcome and analysis here

6   are the same. In *Stubbs v. Danielson*, the Ninth Circuit held that the ALJ's assessed RFC limiting

7   the claimant to "simple tasks" adequately accounted for the claimant's moderate limitations in

8   concentration, persistence, and pace. 539 F.3d 1169, 1174 (9th Cir. 2008). In so holding, the

9   Ninth Circuit distinguished cases from the Third and Seventh Circuits, agreeing instead with

10  other circuits that "an ALJ's assessment of a claimant['s RFC] adequately captures restrictions

11  related to concentration, persistence, or pace where the assessment is consistent with restrictions

12  identified in the medical testimony." *Id.* (citations omitted). Here, review of the record

13  demonstrates that, like *Stubbs*, the ALJ's RFC limitations adequately accounted for Plaintiff's

14  concentration, persistence, and pace limitations.

15                  *5.      Absence of Restriction on Climbing Ladders, Ropes, and Scaffolds*

16          Plaintiff additionally argues that the ALJ's RFC, which permits Plaintiff to

17  "occasionally" climb ladders, ropes, and scaffolds, was not adequately supported given the

18  evidence regarding Plaintiff's "significant brain fog, lethargy, and fatigue." (Dkt. # 17 at 20-21

19  (citing AR at 23-25, 383, 403, 406, 412, 417, 462, 523, 660).) Plaintiff argues that the ALJ erred

20  in assessing this limitation because Plaintiff's testimony and "numerous instances in the medical

21  records" demonstrated otherwise. (Dkt. # 17 at 21.) Plaintiff, however, fails to cite any medical

22  records in support, relying instead on case law from the Fourth Circuit that she contends showed

23  the ALJ improperly discounted her testimony. (*Id.*)

This argument, like others, depends on the Court's adjudication of Plaintiff's challenges to the ALJ's evaluation of her testimony and medical opinions. For the reasons above, the Court has already found that the ALJ properly rejected Plaintiff's testimony and found "not persuasive" the opinions from ARNP Swan and Ms. Finley.

Moreover, Plaintiff has not specifically challenged the ALJ's findings that the April and October 2021 opinions from state agency physicians, Drs. Normal Staley and Tom Dees, on initial review and reconsideration, respectively, were persuasive.[12] Both Drs. Staley and Dees explicitly opined that Plaintiff was able to occasionally climb ladders, ropes, and scaffolds. AR at 81, 106. The ALJ's RFC limitation was identical to both Drs. Staley's and Dees' opinions, and was therefore adequately supported by the medical opinion evidence. *See Stubbs*, 539 F.3d at 1174.

In sum, for the above reasons, the ALJ did not err in his RFC assessment.

### D.     The ALJ Did Not Err in the Step Five Analysis

At the April 2022 hearing, the ALJ posed several hypotheticals to the VE after the VE testified that Plaintiff was unable to perform her past work. AR at 61-64. In response to the ALJ's hypotheticals, the VE testified that a person with the "same vocational factors" as Plaintiff and with a capacity for medium work would be able to perform the jobs of kitchen helper, auto detailer, and hand packager. *Id.* at 61-62. The VE subsequently testified that if the same person was limited to light work, she would be able to perform the jobs of office helper, marking clerk, and products assembler. *Id.* at 62-63.

In his June 2022 decision, the ALJ found at step five that Plaintiff was capable of the three medium work jobs and the three light work jobs identified by the VE. AR at 28. Plaintiff

---

[12] To the extent that Plaintiff intended to challenge the ALJ's evaluation of those opinions, Plaintiff failed to adequately develop such arguments. *See Indep. Towers of Wash.*, 350 F.3d at 929.

argues that the ALJ erred because the ALJ in fact found that she had an RFC for light work with additional limitations. *See id.* at 22. The Commissioner counters that the ALJ's RFC finding constituted a "scrivener's error," and suggests that the ALJ intended to find Plaintiff capable of medium work with additional limitations. (Dkt. # 22 at 11 n.8.) Regardless, though, the Commissioner contends that any error was harmless because the ALJ also found that Plaintiff was capable of the three light work jobs as well. (*Id.* at 11.)

The Court finds that, given the ALJ's stated RFC assessment for light work, the ALJ erred in listing the three medium work jobs. However, the error was harmless because the ALJ also found Plaintiff was capable of performing three light work jobs as well: office helper, marking clerk, and products assembler. AR at 28.

Plaintiff additionally argues that the ALJ erred regarding the light work positions, contending: (1) her limitation to simple, routine tasks meant that she was only able to perform Reasoning Level 1 occupations, and not Reasoning Level 2 occupations, which she contends the office helper, marking clerk, and products assembler constituted, citing to out-of-circuit cases (Dkt. # 17 at 29); (2) the three light work positions fail to account for her social limitations because they require "more than superficial interaction with supervisors during preliminary training and probation periods" (*Id.* at 29-30);[13] and (3) the job of marking clerk is not simple (*Id.* at 30-31).

---

[13] Plaintiff argues in a footnote that although the ALJ's RFC did not specifically reference coworkers or supervisors, "clearly it is implied that the level of interaction found with coworkers and supervisors is the same or more restrictive than that found for the public." (Dkt. # 17 at 30 n.5.)

Additionally, the Court notes that Plaintiff's brief also suggests that the ALJ found she could perform the job of "call out operator." (*See* dkt. # 17 at 28.) However, this appears to have been an error in cutting and pasting from Plaintiff's brief from the *Nichole L.* case, because the callout operator was not one of the jobs at issue in this case. (*Cf.* No. C22-1778-MLP, Dkt. #29 at 29.)

1              *1.      Reasoning Levels*

2          Plaintiff's first argument regarding the Reasoning levels is identical to the argument

3   Plaintiff made in *Nichole L.*, 2024 WL 248709, at *7. (*See* No. C22-1778-MLP, dkt. # 29 at

4   28-29; *cf.* dkt. # 17 at 29.) In that case, Plaintiff also cited to the same non-controlling, out-of-

5   circuit authority in support of her argument, ignoring controlling Ninth Circuit authority. *See id.*

6   Again, as stated in this Court's order in *Nichole L.* and reiterated by the Commissioner in the

7   instant case, "the Ninth Circuit has repeatedly rejected" the argument made by Plaintiff. *See*

8   *Nichole L.*, 2024 WL 248709, at *7. There is a circuit split on this issue, and Plaintiff has again

9   ignored that Ninth Circuit law is contrary to the out-of-circuit (Fourth Circuit) law upon which

10  she relies. *See, e.g.*, *Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015) (discussing *Hackett*

11  *v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), which held that where Plaintiff was limited to

12  routine, simple tasks "level-two reasoning appears more consistent [than level-three reasoning]

13  with Plaintiff's RFC," acknowledging circuit split on issues regarding Levels 2 and 3 Reasoning,

14  agreeing with the Tenth Circuit's decision in *Hackett*, and holding that a residual functional

15  capacity limited to "simple, routine, or repetitive work" does not conflict with the ability to

16  perform Reasoning Level 2 positions); *Davis v. Saul*, 846 F. App'x 464, 466 (9th Cir. 2021)

17  ("Simple work is consistent with positions requiring Reasoning Level 2."); *see also Ranstrom v.*

18  *Colvin*, 622 F. App'x 687, 688 (9th Cir. 2015) ("There is no appreciable difference between the

19  ability to make simple decisions based on 'short, simple instructions,' and . . . what Reasoning

20  Level 2 requires."); *Abrew v. Astrue*, 303 F. App'x 567, 569 (9th Cir. 2008) ("there was no

21  conflict between the ALJ's step five determination that [the Plaintiff] could complete only

22  simple tasks and the vocational expert's testimony that [the Plaintiff] could do jobs that the U.S.

23  Department of Labor categorizes at 'Reasoning Level 2'").

1

2.      *Social Interaction Limitations*

2       Plaintiff's second argument that the three light work jobs failed to adequately account for

3   her social limitations fails for the same reasons that her related RFC argument fails. The Court

4   has already found that the ALJ's assessed RFC social limitations were supported by substantial

5   evidence.

6

3.      *Marking Clerk Job*

7       Plaintiff additionally argues that for the same reasons set forth by the Court in *Kassandra*

8   *P. v. Acting Comm'r of Soc. Sec.*, the ALJ erred in finding that, based on the VE's testimony, she

9   was capable of the marking clerk job because her moderate limitations in concentration, pace,

10  and persistence, were incompatible such a "potentially fast-paced job." (Dkt. # 17 at 30-31

11  (citing No. 3:20-CV-5953-DWC, 2021 WL 3910176, at *6 (W.D. Wash. Sept. 1, 2021)).)

12      *Kassandra P.*, however, is distinguishable from this case because there the plaintiff

13  proffered before the Appeals Council new evidence in the form of an expert declaration, in

14  which the expert asserted that the marker job constituted "a fast[-]paced labor intensive job."

15  2021 WL 3910176, at *6. The *Kassandra P.* plaintiff argued that, given the evidence regarding

16  her limitations — which included an examining medical opinion — the marker job was "not a

17  good choice for [her]." *Id.* The Honorable David W. Christel found in *Kassandra P.* that "the

18  question presented . . . [was] very fact specific." *Id.* Based on the new evidence and the fact that

19  "the ALJ [in *Kassandra*] found persuasive the opinion of [the] examining doctor," Judge Christel

20  concluded that the ALJ erred in finding that the claimant there could perform the job of marking

21  clerk. *Id.*

22      Here, though, as the Commissioner notes, the key facts from *Kassandra P.* are absent in

23  this case. Notably, here, Plaintiff has not submitted any new evidence undermining the VE's

testimony in this case. The Ninth Circuit has held that "an ALJ is entitled to rely on a VE's testimony to support a finding that the claimant can perform occupations that exist in significant numbers in the national economy," and that "[g]iven its inherent reliability, a qualified [VE's] testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192-93 (9th Cir. 2022) (citing *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020)); *see also Bayliss*, 427 F.3d at 1218 ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required."). Given the absence of evidence to the contrary, the VE's testimony here regarding the suitability of the marker job is inherently reliable.

Moreover, even if the Court were to conclude based on *Kassandra P.* that the ALJ erred as to the marker job, thus excluding the position from consideration at step five, the product assembler and office helper jobs remain. AR at 28. In combination, the ALJ found that there were 314,000 jobs existing in the national economy associated with these other two jobs. *Id.* Pursuant to controlling Ninth Circuit precedent, "there is no question that this is a substantial number of jobs."[14] (Dkt. # 22 at 13 (citing *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (holding that 25,000 jobs in the national economy presented a close call but was sufficient))); *see also Andy v. Kijakazi*, No. 22-35934, 2023 WL 6620299, at *2 (9th Cir. Oct. 11, 2023) (holding that the existence of 28,100 jobs nationwide constituted "a significant number of jobs in several regions of the country" under *Gutierrez*, and therefore, "substantial evidence support[ed] the ALJ's step five conclusion that [the claimant was] not disabled").

For these reasons, the ALJ's step five findings were supported by substantial evidence.

---

[14] Given the existence of the product assembler job — which represents 300,000 jobs — Plaintiff's related argument regarding the number of office helper jobs is without merit. (*See* dkt. # 17 at 31-32.)

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED**, and this case is **DISMISSED** with prejudice.

Dated this 2nd day of May, 2024.


_____
MICHELLE L. PETERSON
United States Magistrate Judge